1
2
3
4
5
6
7
8

9                    **UNITED STATES DISTRICT COURT**

10                **SOUTHERN DISTRICT OF CALIFORNIA**

11

12   EDWIN N. GONZALEZ,                          CASE NO.07-CV-1962 W(POR)

13                            Plaintiff,         **ORDER:**

14        vs.                                    **1) ADOPTS THE REPORT**
                                                 **AND RECOMMENDATION**
15                                               **(Doc. No. 43.)**

16
     JOHN DOE, et. al.,
17                                               **2) GRANTS DEFENDANTS'**
                                                 **MOTION TO DISMISS**
18                           Defendants.         **(Doc. No. 35.)**

19

20          On October 10, 2007, Plaintiff Edwin N. Gonzalez ("Plaintiff"), a state prisoner

21   proceeding *pro se* and *in forma pauperis*, commenced this action seeking relief under 42

22   U.S.C. § 1983. (Doc. No. 1.)  Plaintiff filed his Second Amended Complaint ("SAC")

23   on November 5, 2009. (Doc. No. 32.)  On December 18, 2009, Defendants John Doe,

24   et. al. (collectively "Defendants") filed a motion to dismiss. (Doc. No. 35.)  On July 28,

25   2010, Magistrate Judge Louisa S. Porter filed a Report and Recommendation ("Report"),

26   recommending that the Court grant Defendants' motion and dismiss the SAC in its

27   entirety. (Doc. No. 43.)

28

                                          -1-

On August 17, 2010, Plaintiff timely filed his objections to the Report.[1] (Doc. No. 45.)  Defendants filed their reply on September 9, 2010. (Doc. No. 46.)  The Court decides the matter on the papers submitted and without oral argument. See Civil Local Rule 7.1(d.1).  For the reasons outlined below, the Court **ADOPTS** the Report and **GRANTS** Defendants' motion to dismiss.

## I.    BACKGROUND

Plaintiff is a prisoner currently incarcerated at Ironwood State Prison, proceeding _pro se_ and _in forma pauperis_ on his Second Amended Complaint ("SAC") filed pursuant to 42 U.S.C. § 1983. (Doc. No. 32 at 1.)  Defendants are a collection of correctional officers, counselors, and supervising administrators at Calipatria and Ironwood State Prisons. (_Id._ at 3.)  The following description of events is taken from the parties' pleadings and is not to be construed as findings of fact by the Court.

On January 4, 2006, while Plaintiff was an inmate at Calipatria State Prison, he was questioned by Defendant Tamayo about yard incidents and a list of inmates' names found in his personal belongings. (_Id._ at 6.)  Plaintiff explained that the list was for the purpose of filing a group appeal on the basis of religion. (_Id._ at 6.)  Plaintiff denied knowledge of the yard incidents, but Defendant Tamayo allegedly told Plaintiff if "he has to go again for [P]laintiff, that this time things were going to be like the 'old days,' and that [Defendant Tamayo] personally would go inside [P]laintiff's cell and drag him out for his actions." (_Id._ at 6.)

On January 6, 2006, Defendant Preciado searched Plaintiff's cell and stated that prison officials had received confidential information from an informant concerning Plaintiff. (_Id._ at 7.)  When the search did not reveal anything to corroborate the information, Defendant Preciado informed Plaintiff that "the confidential information

---

[1] This Court actually filed the document on August 30, 2009.  However, this Court gives Petitioner the benefit of the "mailbox rule" which deems that a petition is constructively filed when it is delivered to prison officials for filing. Houston v. Lack, 487 U.S. 266 (1988).

is no longer credible and will no longer be considered." (*Id.* at 7.)

Plaintiff was subsequently transferred to Ironwood, where he learned that confidential information had been placed in his prison file. (*Id.* at 7.) He submitted a 602 appeal requesting to see the confidential information, or in the alternative, that the information be removed or corrected. (*SAC* at *Exh.* C5.) Defendant Bates denied the appeal at the informal level on June 17, 2006. (*Id.*)

On July 17, 2006, Defendant Rettagliata denied Plaintiff's appeal at the first formal level. (*Id.* at *Exh.* C6.) As part of the procedure for that decision, Defendant Retaggliatta interviewed Plaintiff. (*SAC* at 8.) Defendant Retaggliatta allegedly asked Plaintiff why he was concerned about the contents of his file if he was a "lifer," and said the information would remain in Plaintiff's record because prison officials at Calipatria State Prison had "found Plaintiff guilty in part." (*Id.* at 8.) This comment confused Plaintiff because he maintains that he had never been charged with any misbehavior at Calipatria. (*Id.* at 8.)

On September 18, 2006, Defendants Payton and Ryan denied Plaintiff's appeal at the second formal level. (*Id.* at *Exh.* C3.) Finally, on December 28, 2006, Plaintiff's appeal was denied at the Director's Level, which held Plaintiff did not have a right to view the confidential portion of his file. (*Id.* at *Exh.* C1.) That decision, in part, reads:

> The appellant is advised that he does not have the right to view the confidential portion of his C-File... The memorandum was approved for placement in [Plaintiff's] Confidential Folder within his C-file. Before authorizing this placement, the approving authority ensured that the memorandum contained the necessary elements to establish it as "confidential." Information which, if known to the inmate, would endanger the safety of any person or information which would jeopardize the security of the institution must be kept confidential. Pursuant to the CCR 3450(d), "No inmate or parolee shall prepare, handle, or destroy any portion of a departmental record containing confidential information as that term is defined in Section 3321.

(*Id.*)

07-CV-1962 W (POR)

1   While his second level appeal was pending, some prisoners assaulted Plaintiff at
2   Ironwood. (*SAC* at 9.)  He sustained serious wounds and was placed in a medical unit.
3   (*Id.* at 9.)  While Plaintiff was receiving medical care, Defendant Payton told Plaintiff
4   he was being placed under contraband watch[2] due to the confidential information in his
5   file. (*Id.* at 9.)  Plaintiff remained on contraband watch for four days. (*Id.* at 9.)

6   On March 12, 2008, Plaintiff filed a First Amended Complaint ("FAC"), seeking
7   relief under 42 U.S.C. § 1983, alleging that prison officials deprived him of his
8   Fourteenth Amendment Due Process rights by placing and maintaining false
9   confidential information in his prison file. (Doc. No. 9.)  On July 2, 2009, the Court
10  granted Defendants' motion to dismiss without prejudice. (Doc. No. 31.)

11  On November 5, 2009, Plaintiff filed a Second Amended Complaint ("SAC")
12  against the following Defendants in their official and individual capacities: F. Hector,
13  Associate Warden; S.J. Ryan, Deputy Warden; M.D. Payton, Facility Captain; Y.
14  Rettagliatta, Correctional Counselor; R. Bates, Correctional Counselor; Preciado,
15  Correctional Sergeant; and Tamayo, Correctional Officer. (Doc. No. 32.)  Defendants
16  Hector, Ryan, Payton, and Rettagliatta are employed at Ironwood, and Defendants
17  Preciado and Tamayo are employed at Calipatria. (*Id.* at 3-4.)

18  In his SAC, Plaintiff asserts three claims: (1) a First Amendment violation
19  because Defendants retaliated against him for filing grievance appeals; (2) an Eighth
20  Amendment violation because Defendants "subject[ed] Plaintiff to the tortures of 'potty
21  watch' [contraband watch surveillance];" and (3) a Fourteenth Amendment Due
22  Process violation because Defendants placed and maintained false confidential
23  information in his file. (*SAC* at 10-17.)  Plaintiff seeks injunctive and declaratory relief,
24  as well as compensatory, punitive, nominal, and mental anguish damages, and attorneys'
25  fees and costs. (*Id.* at 18-19.)

26

27          [2] Under Ironwood State Prison's Operation Procedure No. 096, "contraband
28  watch surveillance" is the "[t]emporary detention and safe recovery of contraband
    concealed within any body cavity." (*Defs.' Req. for Judicial Notice Ex.* A, Doc. No. 25.)

On December 18, 2009, Defendants filed a motion to dismiss Plaintiff's SAC. (Doc. No. 35.)  Defendants present seven grounds to dismiss the action: (1) that Plaintiff has failed to exhaust his administrative remedies; (2) that Defendants are immune from suits in their official capacities under the Eleventh Amendment; (3) that Plaintiff has failed to state a sufficient claim for First Amendment retaliation against any of the Defendants; (4) that Plaintiff has failed to state an Eighth Amendment claim; (5) that Plaintiff has failed to state a Fourteenth Amendment due process claim; (6) that qualified immunity protects Defendants from liability for damages in their individual capacities;[3] and (7) that Plaintiff's request for injunctive relief is moot against Defendants who do not work at Ironwood State Prison. (*Defs.' Mot. to Dismiss* at 2, Doc. No. 35.)

On July 28, 2010, Magistrate Judge Porter issued her Report. (Doc. No. 43.)  On August 17, 2010, Plaintiff filed his objection to the Report. (Doc. No. 45.) Defendants filed their reply on September 9, 2010. (Doc. No. 46.)

## II.   LEGAL STANDARD

### A.   Review of Magistrate Judge's Report

The duties of a district court in connection with a magistrate judge's report and recommendation are set forth in Rule 72 (b) of the Federal Rules of Civil Procedure and 28 U.S.C. § 636 (b) (1).  The district court "must make a *de novo* determination of those portions of the report ... to which objection is made," and "may accept, reject, or modify,

---

[3] As the Report correctly noted, although Defendants list qualified immunity as a ground for dismissal separate from Plaintiff's failure to state constitutional claims under the First, Eighth, and Fourteenth Amendments, the issues are inextricably linked. Specifically, qualified immunity requires two elements, the first of which is Plaintiff's failure to state a constitutional claim. Saucier v. Katz, 533 U.S. 194, 201 (2001).  Thus, as part of its analysis of qualified immunity, the Court will address whether Plaintiff has sufficiently alleged constitutional violations under the First, Eighth, and Fourteenth Amendments.

1   in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C.
2   § 636(b)(1)(C); see also United States v. Raddatz, 447 U.S. 667, 676 (1980); United
3   States v. Remsing, 874 F.2d 614, 617 (9th Cir. 1989).

4

5   **B.    Motion to Dismiss**

6        A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil
7   Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint. See Davis
8   v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999). "The old formula—that the
9   complaint must not be dismissed unless it is beyond doubt without merit—was discarded
10  by the Bell Atlantic decision [Bell Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8
11  (2007)]." Limestone Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

12       A complaint must be dismissed if it does not contain "enough facts to state a claim
13  to relief that is plausible on its face." Bell Atl. Corp., 550 U.S. at 570. "A claim has facial
14  plausibility when the plaintiff pleads factual content that allows the court to draw the
15  reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft
16  v. Iqbal, __U.S. __, 129 S.Ct. 1937, 1949 (2009). The court must accept as true all
17  material allegations in the complaint, as well as reasonable inferences to be drawn from
18  them, and must construe the complaint in the light most favorable to the plaintiff. Cholla
19  Ready Mix, Inc. v. Civish, 382 F.3d 969, 973 (9th Cir. 2004) (citing Karam v. City of
20  Burbank, 352 F.3d 1188, 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington,
21  51 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th
22  Cir. 1986).

23       Where a plaintiff appears in propria persona in a civil rights case, the court must
24  also be careful to construe the pleadings liberally and afford plaintiff any benefit of the
25  doubt. See Karim-Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).
26  However, at a minimum, even a pro se plaintiff must allege with at least some degree of
27  particularity over acts which defendants engaged in that support his claim. Jones v.
28  Community Redevelopment Agency, 733 F.2d 646, 649 (9th Cir. 1984).

1  **III.  DISCUSSION**

2       As a preliminary matter, the Court notes that Petitioner filed an objection to the

3  Report. (Doc. No. 13.) Thus, a *de novo* review is required. 28 U.S.C. § 636(b)(1)(c)); <u>see</u>

4  <u>also</u> <u>United States v. Raddatz</u>, 447 U.S. 667, 676 (1980); <u>United States v. Remsing</u>, 874

5  F.2d 614, 617 (9th Cir. 1989).

6       Plaintiff objects to the Magistrate Judge's following conclusions: (1) that he has

7  failed to exhaust his administrative remedies with respect to his First and Eighth

8  Amendment claims; (2) that he has failed to state a First Amendment retaliation claim

9  against Defendants Bates, Ryan, Rettagliatta, and Payton; (3) that he has failed to state

10  an Eighth Amendment claim against Defendants Payton and Ryan; and (4) that he has

11  failed to state a Fourteenth Amendment Due Process claim against all Defendants. (*Pl.'s*

12  *Obj.* at 2, Doc. No. 45.)   The Court will address the recommendations that were

13  dispositive in the present ruling.

14

15       **A.     Exhaustion**

16       Citing <u>Griffin</u>, the Report concluded that Plaintiff failed to exhaust his

17  administrative remedies with regard to his First and Eighth Amendment claims because

18  he did not provide sufficient notice of either claim in his administrative appeal. (*Report*

19  at 9.)

20       The Prison Litigation and Reform Act states that "no action shall be brought with

21  respect to prison conditions under [42 U.S.C. § 1983], or any other federal law, by a

22  prisoner confined in any jail, prison or other correctional facility until such administrative

23  remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Exhaustion is required

24  prior to the filing of any prisoner lawsuit concerning prison life, whether the claims

25  involve general conditions or specific incidents and whether they allege excessive force

26  or some other wrong.  <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).

27       The State of California provides its prisoners and parolees the right to

28  administratively appeal any departmental decision, action, condition or policy perceived

by those individuals as adversely affecting their welfare. Cal. Code Regs. tit. 15,

1  § 3084.1(a).  Exhausting the administrative remedies involves several steps: (1) informal
2  resolution, (2) formal written appeal on a CDC 602 inmate appeal form, (3) "second
3  level appeal" to the institution head or designee, and finally (4) "third level appeal" to
4  the Director of the California Department of Corrections.  Barry v. Ratelle, 985 F. Supp.
5  1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5).  The third level,
6  or "Director's Level," of review shall be final and exhausts all administrative remedies
7  available in the Department of Corrections.  Cal. Dep't of Corrections Operations
8  Manual § 54100.11, "Levels of Review"; Barry, 985 F. Supp. at 1237–38; Irvin v. Zamora,
9  161 F. Supp. 2d 1125, 1129 (S.D. Cal. 2001).  In addition to pursuing all four levels of
10 appeal, a prisoner must also "compl[y] with the system's critical procedural rules" in
11 order to achieve proper exhaustion.  Woodford v. Ngo, 548 U.S. 81, 95 (2006).

12        Additionally, a prisoner must exhaust his administrative remedies properly.  Id. at
13 93.  "[W]hen a prison's grievance procedures are silent or incomplete as to factual
14 specificity,[4] 'a grievance suffices if it alerts the prison to the nature of the wrong for which
15 redress is sought.'"  Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009) (quoting
16 Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002)).

17

18        **1.      First Amendment Retaliation Claim.**

19        In his objection, Plaintiff argues that the Report "completely overlooks the fact
20 that Plaintiff does not speak, write, or understand English." (Doc. No. 45 at 7.)
21 Alternatively, Plaintiff argues that he provided sufficient notice of the First Amendment
22 claim in his 602 grievance at the Director's level appeal. (SAC at 9, *Exh.* C12.)   The
23 Court disagrees.

24

25

26 ──────────────
       [4] The California Regulations require only that a prisoner "shall use a CDC Form
27 602 Inmate/Parolee Appeal Form to describe the problem and action requested." Cal.
   Code Regs. tit. 15, § 3084.2(a).  Furthermore, the 602 grievance form does not require
28 a prisoner to name or identify specific prison officials. Id.; see also Lewis v. Mitchell, 416
   F. Supp. 2d 935, 941-42 (S.D. Cal. 2005).

1    First, the Court is unpersuaded that Plaintiff's unfamiliarity with the English

2  language is a valid excuse for failing to satisfy the statutory exhaustion requirements.

3  From the numerous documents before the Court, it appears that Plaintiff had, at all

4  times, the assistance of a translator. (*See e.g. SAC, Exh. A* at 1,3-4.)

5    More importantly, as further explained in the Report, neither Plaintiff's grievance,

6  nor his appeals, provided notice of his retaliation claim. (*Report* at 9.)  Even construed

7  liberally, Plaintiff's comments in his Director's level appeal can not be read as anything

8  more than claims regarding the seriousness of having false confidential information in a

9  prison file, which does not provide notice that the grievances involved retaliation. (See

10  *SAC* at *Exh.* at C12; *see also* Doc. No. 46 at 2:11–17.)  But even if the Court did construe

11  the comments that way, Plaintiff has still not shown that he pursued his First

12  Amendment retaliation claim at all four levels of appeal, which means that he has still

13  failed to properly exhaust his administrative remedies. <u>See</u> <u>Woodford</u>, 548 U.S. at 95.

14    In sum, Plaintiff failed to provide prison officials with sufficient notice of a claim

15  that he was being retaliated against for filing prison grievances. <u>See</u> <u>Griffin</u>, 557 F.3d at

16  1120.  As such, the Court **OVERRULES** Plaintiff's objection and **ADOPTS** the

17  Report's conclusion that Plaintiff has not exhausted his administrative remedies in

18  regards to his First Amendment claim. (*Report* at 9.)   Accordingly, Plaintiff's First

19  Amendment claim of retaliation is **DISMISSED**.[5]

20

21            **2.      Eighth Amendment Claim**

22    Similarly, Plaintiff objects to the Report's conclusion that he failed to exhaust his

23  administrative remedies in regards to his Eighth Amendment claim.  Curiously, Plaintiff

24  appears to concede that his appeals (up until the Director's level) did not contain any

25  complaints regarding the contraband surveillance watch. (Doc. No. 45 at 12.)

26  Nevertheless, Plaintiff contends that he personally informed Defendant Ryan of the

27  _____

28    [5] In light of this conclusion, the Court finds it unnecessary to discuss the well-reasoned analysis contained in the Report regarding the factual sufficiency of Plaintiff's First Amendment allegations. (*See Report* at 10–15.)

07-CV-1962 W (POR)

1   attack and the contraband surveillance order by Defendant Payton, which this Court

2   should consider to be sufficient exhaustion.[6] (*Id.* at 12.)  The Court disagrees.

3        A "grievance need not include legal terminology or legal theories" but it must

4   notify the prison of a problem. Griffin, 557 F.3d at 1120.  As noted by the Report,

5   Plaintiff did not mention the contraband surveillance watch underlying his Eighth

6   Amendment claim until the Director's level appeal.  And because the issue had not been

7   raised previously, it was beyond the scope of what could be reviewed at that level. See

8   15 CCR § 3084.5(d); Doc. No. 46 at 2–3.  Moreover, Plaintiff has not provided any legal

9   authority to substantiate his claim that oral notification of a grievance would be sufficient

10  to establish exhaustion through the administrative process.  Thus, the Court concludes

11  that Plaintiff failed to provide prison officials with sufficient notice of a claim involving

12  the contraband surveillance watch. See Griffin, 557 F.3d at 1120.

13       In sum, the Court **OVERRULES** Plaintiff's objection and **ADOPTS** the Report's

14  conclusion that Plaintiff has not exhausted his administrative remedies in regards to his

15  Eighth Amendment claim. (*Report* at 9.)  Accordingly, Plaintiff's Eighth Amendment

16  claim is **DISMISSED**.[7]

17

18       **B.    Failure to State a Fourteenth Amendment Due Process Claim.**

19       The Report concluded that Plaintiff had failed to allege an "atypical and significant

20  hardship" and that his claims of prospective harm – based on the confidential

21  information in his file – were too speculative to invoke due process protections. (*Report*

22  at 17-18.)  In the alternative, even if Plaintiff had alleged a  protected liberty interest in

23

24  _____

25       [6] Plaintiff contends that he "personally informed" Defendant Ryan of the Eighth
    Amendment claim, and that Defendant Ryan failed to include this in his second formal
26  level response. (*Pl.'s Obj.* at 12, Doc. No. 45.)  Significantly, Plaintiff does not contend
27  that this claim was brought in his earlier appeals.

28       [7] In light of this conclusion, the Court finds it unnecessary to discuss the well-
    reasoned analysis contained in the Report regarding the factual sufficiency of Plaintiff's
    Eighth Amendment allegations. (*See Report* at 15–17.)

1    accurate prison records,[8] the Report states that Plaintiff still failed to allege that he was
2    deprived of that interest without due process of law. (*Id.* at 18–19.)  The Court agrees.

3          In order to successfully bring a claim under the Fourteenth Amendment's Due
4    Process Clause, Plaintiff must establish a constitutionally protected liberty or property
5    interest at stake. See Ingraham v. Wright, 430 U.S. 564, 569 (1972).  Once a liberty
6    interest has been found, the court will then determine the process an inmate is due. See
7    Wilkinson v. Austin, 545 U.S. 209, 224-25 (2005).

8

9          **1.      Liberty Interest**

10         As explained more fully in the Report, under the Fourteenth Amendment
11   prisoners are afforded certain due process protections when charged with a disciplinary
12   violation. Wolff v. McDonnell, 418 U.S. 539, 564-71 (1973).  However, such protections
13   apply only when the disciplinary action implicates the liberty interest in some
14   "unexpected manner" or imposes an "atypical and significant hardship on the inmate in
15   relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484; see also
16   Ramirez v. Galaza, 334 F.3d 850, 860 (2003).

17         Plaintiff continuously claims that he was unjustifiably subjected to contraband
18   surveillance watch as a result of the false information in his file.  As this Court previously
19   explained, however, Plaintiff must allege a factual comparison between the specific
20   disciplinary action taken and the typical course of action. (See Doc. No. 31 at 6; citing
21   Sandin v. Conner, 515 U.S. 472, 483–484 (1995)).  Despite this warning, Plaintiff did
22   not allege any material differences between contraband surveillance watch and
23   administrative segregation.[9]  It is also worth noting that Plaintiff did not allege that other

24

25         [8] As mentioned in the Report, neither the Supreme Court nor the Ninth Circuit
26   has decided the issue of whether a prisoner has a liberty interest in accurate prison
     record information. (*Report* at 17 n.9)

27         [9] In his objection, Plaintiff addresses, for the first time, material differences
28   between contraband watch surveillance and administrative segregation.  In Reply,
     Defendants contend that Plaintiff's "belated attempt" to amend his pleadings should not
     be regarded. (Doc. No. 46 at 3–4.)  Considering Plaintiff was aware of this deficiency at

                                              -11-                        07-CV-1962 W (POR)

1   prisoners who had been involved in a similar yard incident were not subjected to
2   contraband surveillance. (*SAC* at 9.)   Thus, Plaintiff has not demonstrated that he
3   suffered an atypical and significant hardship in relation to ordinary incidents of prison
4   life. (*Report* at 17-18.)

5        Additionally, the Court believes that Plaintiff's claims of prospective harm – based
6   on the confidential information in his file – are too speculative to invoke due process
7   protections. (*See Report* at 18.)  The SAC does not allege that the Parole Board has relied
8   on any false information or that Plaintiff has actually been denied from any rehabilitative
9   program as a result of that information. (*SAC* at 8.)  Notably, Plaintiff has not objected
10  to this conclusion.  As such, Plaintiff's speculative claims do not establish a protected
11  liberty interest, and thus, "due process protections" do not apply. <u>Sandin</u>, 515 U.S. at
12  484.

13

14        **2.    Procedural Protection**

15       Even if Plaintiff was able to establish the presence of a liberty interest, the Court
16  agrees with the Report's finding that Plaintiff was not deprived due process of law.
17  (*Report* at 18–19.)   The SAC and the attached exhibits show that Plaintiff was given
18  notice that the confidential information was in his file and that he was afforded the
19  ability to challenge that information at the various administrative levels.   Plaintiff's
20  objection about the deference afforded to prison administrators has done nothing to
21  upset this legal conclusion. (*See* Doc. No. 45 at 13.)

22       In sum, the Court **OVERRULES** Plaintiff's objection and **ADOPTS** the Report's
23  conclusion that Plaintiff has failed to sufficiently allege a claim under the Fourteenth
24  Amendment. (*Report* at 19.)   Accordingly, Plaintiff's Fourteenth Amendment claim is
25  **DISMISSED**.

26

27
_____
28
the time of his last amendment, the Court agrees. <u>See</u> Doc. No. 31 at 6; citing <u>Sandin</u>,
515 U.S. at 483–484.

C.    **Plaintiff's Claim For Injunctive Relief Is Moot.**

Lastly, because the Court has dismissed each of Plaintiff's three causes of action, and because Plaintiff has not objected to the Report's analysis, the Court **ADOPTS** the Report's conclusion that the claim for injunctive relief is moot.  As such, the Court **DISMISSES** Plaintiff's request for injunctive relief. (See *Report* at 19.)

IV.   CONCLUSION AND ORDER

For the reasons cited above, and for the reasons expressed in the Report which are incorporated herein by reference, the Court **OVERRULES** Plaintiff's objection (Doc. No. 45), **ADOPTS** the Report in its entirety (Doc. No. 43), and **GRANTS** Defendants' motion to dismiss. (Doc. No. 35.)

Because the Court has already afforded Plaintiff several opportunities to amend his complaint, the Court dismisses this case in its entirety as to all Defendants **WITHOUT LEAVE TO AMEND**. (See *Report* at 20.)

**IT IS SO ORDERED.**

DATED:  September 20, 2010

Hon. Thomas J. Whelan
United States District Judge

-13-

07-CV-1962 W (POR)